```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SONIA PUSEY,                                                    REPORT AND
                            Plaintiff,                          RECOMMENDATION
            - against -
DELTA AIRLINES,                                                 09-CV-4084 (ENV) (JO)
                            Defendant.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiff Sonia Pusey ("Pusey"), appearing *pro se*, moves to reopen this settled case and proceed to trial on her employment discrimination claims against defendant Delta Airlines, Inc. ("Delta"). Docket Entry ("DE") 85. Pusey asserts that she was not competent to enter into a binding settlement agreement, and that she is therefore entitled to disavow it. Upon a referral from the Honorable Eric N. Vitaliano, United States District Judge, I now make this report and for the reasons set forth below, respectfully recommend that the court deny the motion.

I. Background

   A. The Parties Enter Into An Oral Agreement

On July 21, 2011, Pusey and counsel for Delta appeared before me for a settlement conference. Docket Entry ("DE") 83. After extensive negotiations that occurred off the record, the parties agreed to settle the case on certain specific terms. *Id.* Once the parties had agreed on terms, they went on the record to describe them; specifically, I described my understanding of the terms of their agreement and asked each party to confirm whether my summary was correct and whether that party did in fact agree to settle the case on those terms. As set forth below, that colloquy was twice interrupted when Pusey, alert to issues about the scope of the release of her claims that had not been explicitly addressed, sought to clarify and slightly amend the terms of the agreement.

Each time that happened, the parties engaged in further discussion off the record and then, having resolved matters to their mutual satisfaction, proceeded to confirm their agreement.

The parties agreed that the terms of their settlement would be confidential, and indeed the precise contours of that mutual obligation was the source of some colloquy on the record. Pursuant to that agreement, I ordered the minutes of the conference sealed. However, because Pusey contends in the instant motion that she was not competent to proceed during that colloquy, I transcribe portions of it below (redacting references to specific settlement terms) because an appreciation of that colloquy is critical to an understanding of my rejection of Pusey's assertion that she was anything but lucid and competent throughout.

> THE COURT: Pusey v. Delta Airlines, 09-cv-4084. I'm very pleased to report that after significant negotiations between the parties, they have agreed to settle the case on the following terms and Ms. Pusey and counsel, please listen carefully. I'll state my understanding of the terms and then just ask each of you to confirm whether that's your agreement. The defendants will pay a total of [redacted[1]] to Ms. Pusey and in exchange, Ms. Pusey will agree to dismiss all claims. Both sides will provide its adversary with general releases. The terms of this settlement agreement will remain confidential which means that if anybody asks any party about the outcome of the case, they will simply say that the case has been resolved and there will be no statement as to whether there was a payment or what the payment was. That is the extent of the confidentiality. Ms. Pusey, in particular, remains free to say whatever she likes about the offense, leading to her complaint. Ms. Pusey, is that your understanding of the agreement? And do you agree to be bound by those terms?
>
> MS. PUSEY: Yes.
>
> THE COURT: All right. Mr. Stone, on behalf of your clients, is that your understanding of the agreement?
>
> MR. STONE: With one caveat, yes, your Honor. There was a [redacted] provision that was a term.
>
> THE COURT: Oh, I'm sorry.

---

[1] The agreement made not only the amount of the payment confidential, but also the fact that Delta agreed to pay anything at all. I include reference to the latter fact only because Delta has explicitly discussed it in a letter filed on the public docket and thereby waived confidentiality as to the fact of the payment. DE 86. The settlement amount remains confidential.

>     MS. PUSEY: No.
>
>     THE COURT: There I did forget that. In addition, the parties have agreed that part of the consideration for the payment to Ms. Pusey will be that Ms. Pusey agrees that [redacted]. Is that your understanding, Ms. Pusey?
>
>     MS. PUSEY: Correct.
>
>     THE COURT: And do you agree to be bound by that term?
>
>     MS. PUSEY: Correct. Yes.
>
>     MR. STONE: One other caveat which is, your Honor, while you've correctly described the confidentiality provisions, obviously there are other legal issues that may come into play depending on what Ms. Pusey said about Delta Airlines down the road. We're not releasing any future claims.
>
>     THE COURT: Well, are there any claims that you're aware of?
>
>     MR. STONE: No, no claims that we're aware of at this time.
>
>     THE COURT: Okay.

DE 87 (Transcript of settlement proceedings dated July 21, 2011) ("ST") at 2-3.

Delta's counsel having raised an issue about the scope of the release, Pusey immediately raised an issue of her own in that regard.

>     MS. PUSEY: But you did vaccinate – I was vaccinated and, you know, there are – that was cost (inaudible).
>
>     THE COURT: Wait. Let me just ask, does either side want to, at this point, have any claims that they want to pursue against the other?
>
>     MR. STONE: No, your Honor.
>
>     THE COURT: Do you have any claims that you want to pursue after this is over against Delta?
>
>     MS. PUSEY: Probably on the workers compensation side because I still have an ongoing disability….
>
>     …
>
>     MR. STONE: I didn't realize there was an outstanding workers compensation claim, your Honor.

3

> MS. PUSEY: Because one of the things that they were looking at – excuse me – oh God, I hope this is not a problem – was also, just because it's an unusual case over there for them, as well.

ST at 4.

In the portion of the colloquy transcribed above, Pusey not only demonstrated her appreciation of the scope of the release that she was negotiating, but also a sophisticated bargaining position. Specifically, she expressed an intent to preserve the parties' agreement to settle the instant case without thereby having to abandon a worker's compensation claim pending in another forum. As the next portion of the transcript makes clear, Pusey succeeded in achieving that goal.

> MR. STONE: I do not think – I need to make a call, your Honor, but I do not think it's going to be a problem. If I could make a call.
>
> THE COURT: We'll go off the record briefly.
>
> MR. STONE: One quick – (Off the record).
>
> THE COURT: You're free to pursue it.
>
> MR. STONE: That's separate.
>
> MS. PUSEY: Okay.
>
> THE COURT: That's separate. You're not winning it.
>
> MS. PUSEY: Okay.
>
> THE COURT: You're not losing it. Nothing is happening with respect to that claim.
>
> MS. PUSEY: Right. I don't want to go in there and they come up and say –
>
> THE COURT: Right.
>
> MS. PUSEY: – well, you settled in federal court and you're not entitled to anything.

> MR. STONE: To the extent there is an open workers comp claim, I don't know if there was not or not, but if there is, that claim would not be released by virtue of this.

ST at 5.

Pusey having succeeded in amending the agreement to ensure that she could proceed with a separate claim against Delta notwithstanding the release here, it appeared that the parties were once again in agreement. When I began to recite that revised agreement concerning the scope of her release, Pusey again demonstrated her clear-headedness and the care that she took to ensure she understood the settlement.

> THE COURT: Okay. So we have agreed that the releases –
>
> MS. PUSEY: Okay. Let me write this –
>
> THE COURT: – that each side will execute will not include, and this is the sole exception in terms of any current claim, Ms. Pusey, to the extent Ms. Pusey has an open workers compensation claim, it is not terminated or in any way affected by the settlement. In all other respects, the parties will release each other from any claim that they have. No party anticipates any further claim.
>
> And just to reiterate, the payment to Ms. Pusey will be a total of [redacted]. The case will be dismissed. There will be mutual releases with the exception of any workers compensation claim by Ms. Pusey. The parties agree that [redacted] and the parties agree that they will maintain confidentiality as to the terms of the agreement but there's no other obligation of confidentiality other than as to the terms of the agreement and the fact that a payment has been made.
>
> MS. PUSEY: What was the last sentence, please?
>
> THE COURT: There's no obligation of confidentiality other than confidentiality as to the terms of the agreement and the fact that a payment has been made.
>
> MS. PUSEY: Right. Correct.

ST at 6-7.

After I again described the settlement terms, Pusey confirmed my description and initially agreed to accept them, only to raise yet another issue that had yet to be addressed

explicitly: "So if they have a class action lawsuit, can I get in on that or not?" ST at 7. That prompted still further negotiation off the record. ST at 8. When those negotiations concluded, the parties finally reached an agreement that each found acceptable.

> THE COURT: … So let me start again, so that we have a clear record of the terms of the settlement and then I'll ask each party to confirm whether that is that party's understanding. The defendants [sic] will pay a total of [redacted] to Ms. Pusey. The – Ms. Pusey agrees that the case will be dismissed. Both sides will provide mutual releases of all claims with the exception that any current pending workers compensation claim by Ms. Pusey is not released by this settlement. To the extent that Ms. Pusey had a question about the possibility of joining in with any class action, to the extent it would be based on any past occurrence, she would be foreclosed by the terms of this settlement. Obviously, no party is giving up the right to pursue a claim that arises in the future.
>
> The parties agree that [redacted]. The parties agree that the terms of this agreement will be confidential. If anybody asks either party about the case, they will – they can say that it has been resolved but may not reveal the terms of the settlement or the fact that a settlement has been paid. Other than that, there are no other terms to which the parties have agreed. Ms. Pusey, is that your understanding?
>
> MS. PUSEY: Yes, your Honor.
>
> THE COURT: And do you agree to be bound by those terms?
>
> MS. PUSEY: Yes, your Honor.
>
> THE COURT: Mr. Stone, on behalf of your clients, is that your understanding of the agreement?
>
> MR. STONE: Yes, your Honor.
>
> THE COURT: And do your clients agree for you to be bound by those terms?
>
> MR. STONE: Yes, your Honor.

ST at 8-9.

    B.    <u>The Parties Enter Into A Written Agreement, And Delta Performs</u>

In the weeks that followed, the parties negotiated over the precise wording of the written settlement documents. *See* DE 88 at 1; DE 94 at 1. They eventually crafted mutually agreeable

terms that Delta's counsel reduced to writing and sent to Pusey for signature. Pusey executed the written agreement on August 30, 2011. DE 86-1 (signature page of settlement agreement bearing Pusey's signature). Delta executed the agreement on September 6, 2011, and thereafter tendered payment to Pusey. *Id*.

      C.      <u>Pusey Repudiates And Seeks To Undo The Settlement</u>

Pusey refused to accept Delta's payment. Instead, on September 13, 2011, she submitted to the court a letter requesting that the settlement be voided and the case restored to the court's calendar. Pusey argued, in essence, that she was incompetent to enter into a binding agreement when she negotiated the oral agreement on July 21, 2011, because she was experiencing the side effects of her prescription medication including "sedation, drowsiness, euphoria … hot flashes, severe impairment of judgment, confusion, and rapid heartbeat." DE 85 (Pusey's Motion) at 2.

On October 27, 2011, the parties appeared before me for a hearing on Pusey's motion at which we discussed both the oral settlement agreement and the written one. *See* DE 89 (minute entry); DE 95 (transcript of hearing) ("HT"). With respect to the written agreement, Pusey confirmed that she had not been on medication when she signed it. HT at 7 ("At that point, I read it. I wasn't on medication."), 8, 12, 13. She also acknowledged that before signing the written agreement, she "got an opinion from an attorney." HT at 13. In explaining her decision to execute the written agreement, Pusey did not claim to have been rendered incompetent by medication, but said only that she believed herself to be without any viable alternative at the time, in part because Delta's counsel refused to bargain any further over the terms. HT at 9, 10-11.

With respect to the oral agreement, I asked Pusey if she had any evidence that she was taking medication at the time of the settlement conference that rendered her incompetent to enter

7

into an agreement. Pusey responded that she did not yet have such evidence, but that she could get it. HT at 4-5. I told Pusey that if she could produce a statement by a doctor who "will say essentially that … because of the medication [she was] taking, [she was] not competent … the day that [she] appeared in court[,]" I would schedule a hearing at which such a doctor could testify subject to Delta's cross-examination. HT at 4. Later in the same proceeding, I reiterated that Pusey's evidentiary burden was to "put in an affidavit or some sort of declaration through your doctor that on July 21, he is aware that you were under the influence of medication that would have rendered you incompetent to make a decision." ST at 22.

On December 5, 2011, Pusey submitted a letter from Dr. Allamprabhu S. Patil, M.D. DE 93. Dr. Patil offered no opinion as to Pusey's competence on July 21, 2011; nor did he opine that Pusey was likely, or even possibly, suffering from the symptoms she had described on that day; nor did he opine as to whether such symptoms would have rendered Pusey incompetent to understand and enter into a settlement. The doctor wrote no more than that the symptoms Pusey self-reported are, in fact, "rare" side effects of medication that had been prescribed for her. *See id*.

Delta submitted a letter in response on December 8, 2011. Among other things, it argued that Dr. Patil's letter did not advance Pusey's motion both because it failed to establish that Pusey was incompetent at the time of the settlement conference and because her medical condition at the settlement conference had no bearing on her competence to execute the written agreement. DE 94 at 1-2. On January 12, 2012, Pusey submitted a written response in which she urged the court to schedule a conference whereby her doctor could provide further details about the effects of her medication. DE 98 at 3. Pusey also suggested that she should not be bound by the settlement agreement since Delta had refused to engage in settlement negotiations early on in the case, and

8

because she ultimately was dissatisfied with the agreement in that it did not include, for example, reimbursement for her COBRA payments and a "reputable discharge" from her employment. DE 98 at 1-2. I did not schedule an evidentiary hearing because, for the reasons set forth below, I conclude that the record plainly demonstrates that the settlement is binding and enforceable.

II.     Discussion

"[S]ettlement agreements to end litigation are strongly favored by courts and may not be 'lightly cast aside.'" *Cook v. Huckabay*, 2009 WL 3245278, at *2 (E.D.N.Y. Oct. 1, 2009) (quoting *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997)). "A settlement agreement is a contract, and once entered into, the contract is binding and conclusive under general principles of contract law." *Id.* (citing *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)). "A court may relieve a party of the consequences of a settlement agreement only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident." *Willgerodt*, 953 F. Supp. at 560 (quotation omitted); *see also Jordan v. Verizon Corp.*, 2005 WL 3116750, at *1 (2d Cir. Nov. 22, 2005). "Afterthought or change of mind are not sufficient to justify rejecting a settlement." *Jordan*, 2005 WL 3116750, at *1 (quoting *Willgerodt*, 953 F. Supp. at 560); *see also Powell*, 497 F.3d at 128 ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect.").

Applying such principles, I conclude that the court should deny Pusey's motion. As explained below, the oral settlement agreement that the parties entered on the record in open court on July 21, 2011, is a binding contract that is not undermined by Pusey's assertion that she took medication that day that rendered her incompetent. Moreover, even if the oral agreement were not

9

binding, there is no reason to disregard the written agreement that she executed at a time when, as she acknowledges, she was not medicated and she had obtained the advice of counsel.

      A.      <u>The Oral Agreement Was Enforceable</u>

Even where a settlement agreement is not reduced to writing, "a voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable." *Powell*, 497 F.3d at 129 (quoting *Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO*, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam)). "The fact that [the] Plaintiff proceeded pro se does not diminish the enforceability of the oral settlement agreement." *Lauderdale v. City of New York*, 2009 WL 2482158, at *1 (S.D.N.Y. Aug. 13, 2009) (citing *Wesley v. Corr. Officer Badge # 9417*, 2008 WL 41129, at *3 (S.D.N.Y. Jan. 2, 2008); *see also Willgerodt*, 953 F. Supp. at 560 (enforcing *pro se* defendant's oral agreement to settle).

A court should consider four factors, none of which is decisive, in assessing whether to enforce an oral settlement agreement: whether there has been an express reservation of the right not to be bound in the absence of a writing; whether there has been partial performance of the contract; whether all of the terms of the alleged contract have been agreed upon; and whether the agreement at issue is the type of contract that is usually committed to writing. *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80-81 (2d Cir. 1985) (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-77 (2d Cir. 1984); Restatement (Second) of Contracts § 27 comment c (1981)); *see also Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320, 323 (2d Cir. 1997).

Applying the four *Winston* factors, I conclude that the parties entered into an enforceable agreement at the settlement conference on July 21, 2011. First, neither party made any reservation to be bound only by a written agreement; rather, the parties expressly agreed to be bound by the

terms that were stated on the record at the settlement conference. Second, there was partial performance of the contract: indeed, Delta completed its performance, by tendering payment, before Pusey sought to disavow the settlement. Third, all of the terms of the agreement were set forth on the record at the settlement conference, including terms concerning the scope of the release that Pusey negotiated after the parties had agreed to the settlement amount and expressed the view that they had achieved a settlement. Finally, the terms of the agreement were not so complex that the parties would not likely have intended to be bound without formal execution of a written agreement. *See Ciaramella,* 131 F.3d at 326 (noting that "the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally"); *see also Jackson v. Heidelberg L.L.C.*, 296 Fed. Appx. 102, 103 (2d Cir. 2008).

Pusey argues that the oral settlement agreement should not be enforced because she was experiencing the debilitating side-effects of her prescription medication during the settlement conference. DE 85. The evidence does not support such a finding. After an extensive opportunity to present medical opinion evidence, Pusey has done no more than submit evidence that certain symptoms she subjectively self-reported – "rapid heart rate, [feeling] warm & sedated … difficulty concentrating and [dry] mouth[,]" DE 93 – are in rare cases experienced by people who take the medication that Pusey claims to have taken the morning of the settlement conference. Even taken at face value, that evidence does not approach the kind of showing necessary to demonstrate that the effects of Pusey's medication "caused her to lack contractual capacity or that her agreement was the result of impulsive or irrational behavior beyond her control." *Willgerodt*, 953 F. Supp. at 560 (citing *Blatt v. Manhattan Med. Grp., P.C.*, 519 N.Y.S.2d 973, 975 (App. Div. 1987)).

11

Certainly, Pusey did not complain during the settlement conference that she was experiencing any ill-toward effects of her medication, nor did her demeanor suggest otherwise. To the contrary, Pusey appeared lucid and engaged during the proceedings and, as described above, was a vigorous and effective advocate for her interests.

The latter fact is important because under applicable law, there are two related tests for deciding whether to void a contract on the basis of a party's mental condition.[2] First, under the so-called "cognitive test," the court seeks to determine whether a party's "mind was 'so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction' and make a rational judgment concerning that transaction." *Blatt*, 519 N.Y.S.2d at 975 (quoting *Aldrich v. Bailey*, 132 N.Y. 85, 89 (1892) and citing *Paine v. Aldrich*, 133 N.Y. 544 (1892)). Second, under the so-called "motivational test," the court seeks to determine whether "the evidence indicates that a person is suffering from a psychosis which renders him or her incapable of making a voluntary decision, and the other party was, or should have been, aware of the contractor's condition." *Id.* at 976 (citing *Ortelere v. Teachers' Ret. Bd.*, 303 N.Y.S.2d 362, 369 (N.Y. 1969)). Pusey's submissions do not come close to satisfying the cognitive test, and the record provides no reason to believe that Delta knew or should have been aware of any reason why Pusey was not competent to enter into a binding settlement agreement on July 21, 2011.[3] I

---

[2] The case law of this circuit has not definitively resolved whether the validity of an oral settlement agreement is to be determined under state or federal law. The prevailing view is that the question "is essentially a moot one, as there is no meaningful substantive difference between federal and New York law with regard to enforceability." *Silas v. City of New York*, 536 F.Supp.2d 353, 357-58 (S.D.N.Y. 2008).

[3] Pusey has requested a conference so that her doctor may supply additional information that she believes will support her claims. DE 98 at 3. I decline to do schedule such a hearing. Pusey has already had ample opportunities to provide the kind of evidence necessary to put her doctor's opinion in issue and has failed to produce it; I therefore have no reason to believe that any further development of the record will do anything other than needlessly place burdens on Pusey's doctor

therefore conclude that the oral settlement agreement that the parties entered into in open court on July 21, 2011, was enforceable as of that date.

B. The Written Agreement Was Enforceable

Pusey acknowledges that she signed the written settlement agreement at a time when she was not taking medication and after receiving the advice of counsel. That agreement, moreover, incorporated the same terms as those to which the parties agreed orally in open court (a fact that further undermines Pusey's challenge to the oral agreement). In the absence of any showing of fraud, collusion, mistake, accident, or any other circumstance sufficient to invalidate a contract – and Pusey does not even purport to make such a showing – that written settlement agreement is binding on the parties. *See Jordan*, 2005 WL 3116750, at *1; *Willgerodt*, 953 F. Supp. at 560. And while Pusey now maintains that the agreement should have contained additional terms that would be more advantageous to her, such as reimbursement of her COBRA payments, *see* DE 98 at 2, her dissatisfaction with the terms she negotiated provides no basis to void the settlement. *See Powell*, 497 F.3d at 128; *Willgerodt*, 953 F. Supp. at 560. Accordingly, even if the oral settlement agreement were not enforceable, that would not undermine the binding nature of the parties' written contract.

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court deny plaintiff Sonia A. Pusey's motion to vacate the settlement and reopen this case.

---

and on Delta. If Pusey seeks further review of my decision not to hold a further hearing, I encourage her, as part of her objections to this report and recommendation, to submit an additional affidavit from her doctor that actually opines that the side effects of her medication actually rendered her incompetent to enter into a binding agreement on July 21, 2011. I emphasize, however, that even such evidence would not lead me to recommend granting the instant motion because, as discussed below, Pusey entered into a binding written settlement agreement with Delta at a time when she was not taking any medication.

IV. <u>Objections</u>

I direct the defendant to serve a copy of this Report and Recommendation on the plaintiff by certified mail, and to file proof of service no later than February 10, 2012. Any objections to this Report and Recommendation must be filed on the electronic docket no later than February 24, 2012. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
      February 7, 2012

                                          /s/
                                   JAMES ORENSTEIN
                                   U.S. Magistrate Judge